1   SCOTT N. SCHOOLS (SCBN 9990)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   JAMES A. SCHARF (CSBN 152171)
    Assistant United States Attorney
4
5       150 Almaden Blvd., Suite 900
        San Jose, California 95113
        Telephone: (408) 535-5044
6       FAX: (408) 535-5081
        James.Scharf@usdoj.gov
7
    Attorneys for Defendant
8   United States of America

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  PAUL GORDON,                    )   Case No. C 07-02628 JW
                                    )
14          Plaintiff,              )
                                    )
15      v.                          )   DEFENDANTS' NOTICE OF RECENT
                                    )   OPINIONS SUPPORTING
                                    )   DEFENDANTS' MOTION TO DISMISS
16  TRANSPORTATION SECURITY         )
    ADMINISTRATIVE, SECRETARY,      )   Date: November 5, 2007
17  DHS,et al,                      )   Time: 9:00 a.m.
                                    )   Judge: Hon. James Ware
18          Defendants.             )

19  ─────────────────────────────────

20
21          PLEASE TAKE NOTICE that, after defendants filed their motion to dismiss, two federal

22  district courts have issued opinions, supporting the arguments set forth in defendants' motion to

23  dismiss.  Those opinions,  Jordan v. Chertoff, No. CV 06-1362 AG (JTLx) (CD CA August 27,

24  2007) and Arias v. Chertoff, No. 07-20110-CIV-GRAHAM (SD FL August 22, 2007), are

25  attached hereto as Exhibits A and B, respectively.

26
27
28
    Defendants' Notice of Recent Opinions Supporting Defendants' Motion to Dismiss
    Gordon v. Transportation Security Administrative, Secretary, DHS
    C 07-02628 JW

1    DATED: September 12, 2007                SCOTT N. SCHOOLS
2                                              United States Attorney
3                                              _____
                                                          /S/
4                                              JAMES A. SCHARF
                                               Assistant United States Attorney
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A



*Priority Send*

**ORIGINAL**

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 2 8 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| IRENE JORDAN | ) | CASE NO. ~~SA~~CV 06-1362AG (JTLx) |
| Plaintiff, | ) | |
| v. | ) | [~~TENTATIVE~~] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| MICHAEL CHERTOFF, Secretary Department of Homeland Security | ) | |
| Defendant. | ) | |

DOCKETED ON CM

AUG 2 8 2007

BY _____ 024

Before the Court is a Motion for Summary Judgment ("Motion") brought by Defendant

Michael Chertoff, Secretary Department of Homeland Security ("Defendant"). After

considering the moving, opposing, and reply papers, and oral argument by the parties, the Court

GRANTS IN PART and DENIES IN PART Defendant's Motion.

**BACKGROUND**

Plaintiff, an African American female over forty years of age, argues that she was

discriminated and retaliated against by Defendant on the basis of her race, gender, age, and

disability.

39

## 1.    PLAINTIFF'S EMPLOYMENT HISTORY

Plaintiff was hired by the Transportation Security Administration ("TSA") as a security screener at Los Angeles International Airport ("LAX") in December 2001. (Deposition of Irene Jordan ("Jordan Deposition") 10:18-20.) Among other duties, security screeners are required to lift and place luggage on a conveyor belt for x-ray examination. (Jordan Depo. 27:6-15.)

Plaintiff claims that in early 2003 she injured her right knee while at work. (Declaration of Irene Jordan in Support of Opposition to Defendant's Motion for Summary Judgment ("Jordan Declaration") ¶ 3.) The injury was not witnessed by anyone other than the Plaintiff. (Statement of Genuine Issues in Opposition to Defendant's Motion for Summary Judgment ("SGI") ¶ 10.) Plaintiff subsequently filed a workers compensation claim with the United States Department of Labor. (SGI ¶ 10.)

In March 2004 Plaintiff filed a request for Equal Employment Opportunity ("EEO") counseling, alleging that she was discriminated against on the basis of her race and disability. Plaintiff's EEO request identified an incident in which she claimed to have been verbally harassed by a supervisor accusing her of failing to perform her duties. (Jordan Decl., Ex. E.)

Plaintiff claims that she suffered a second work-related knee injury, this time to her left knee, on April 19, 2004. (SGI ¶ 16.) While Plaintiff's deposition testimony as to the source of the left knee injury is ambiguous, her workers compensation claim stated that the injury occurred when Plaintiff tripped over a mat and twisted the knee. (Young Decl., Ex. 10.)

One week after the second knee injury, Plaintiff requested that her employer make accommodations to allow her to spend less time on her feet during work. (Young Decl., Ex. 12.) Plaintiff's "Request for Special Accommodations" did not mention the knee injury of April 19, 2004, but referred instead to a "severe foot injury." (Id.) TSA subsequently transferred Plaintiff to a "limited light-duty position" pending review of her workers compensation claim. (Declaration of Frank Alonso ("Alonso Declaration") ¶ 2.) In July 2004, while Plaintiff was still assigned to the light-duty position, the workers compensation claim for her injury was denied by the Department of Labor (DOL), citing Plaintiff's failure to provide sufficient medical evidence

1  of a "diagnosis which could be connected" to the claimed workplace injury. (SGI ¶ 25.)

2  At some point following the denial of Plaintiff's workers compensation claim, she was

3  informed by supervisor Frank Alonso that she would be required to return to regular duty as a

4  security screener. (SGI ¶ 26.) Defendant contends that it is TSA policy to require all security

5  screeners to be physically fit to perform the full range of screening duties, and that light-duty

6  assignments are available only for employees whose workers compensation claims are approved

7  by the DOL. (Alonso Decl. ¶ 2.) Plaintiff does not dispute TSA's policy regarding light-duty

8  assignments. Instead Plaintiff provides evidence that her own light-duty assignment was not

9  made according to the TSA policy, but was made in exchange for her agreement to withdraw an

10  earlier Equal Employment Opportunity ("EEO") complaint against TSA. (Jordan Decl. ¶ 8;

11  Jordan Decl., Ex. E.) Plaintiff contends that this informal agreement was violated when, upon

12  her failure to produce documentation of her physical limitations, Alonso required Plaintiff to

13  return to full duty. (Jordan Decl. ¶ 15.)

14  Plaintiff asserts that her reassignment to regular duty not only contradicted the terms of

15  her agreement to withdraw the EEO complaint, but was also an act of retaliation for her filing

16  that complaint. (Jordan Decl. ¶¶ 15-19.) According to Plaintiff, other retaliatory acts by TSA

17  supervisors included being forced to stand during entire shifts "as punishment for complaining,"

18  and having her schedule changed without notice, resulting in loss of pay. (Id.)

19

20  **2.    PLAINTIFF'S APPLICATION FOR ADMINISTRATIVE POSITION**

21

22  From April to October of 2004, the TSA announced four openings for Administrative

23  Assistant positions. (Jordan Decl., Ex. F-I.) During the time Plaintiff spent on "light-duty"

24  assignment, she had performed duties similar to those of a TSA Administrative Assistant

25  position. (Jordan Decl. ¶ 23.) Plaintiff provides evidence that her performance of these

26  administrative duties led Barbara Jones, her supervisor at the time, to offer Plaintiff a position as

27  a full-time Administrative Assistant, and that Plaintiff accepted the offer. (Jordan Decl. ¶¶ 9-

28  10.) The affidavit of Barbara Jones disputes this account, and states that Jones advised Plaintiff

1   to apply for these positions, but "never made a job offer" to Plaintiff.  (Jordan Decl., Ex. O.)

2   Plaintiff admits that she did not follow the TSA's formal application requirements for any of the

3   Administrative Assistant positions, which included submitting a resume to the Human Resources

4   department by a specified date.  (Jordan Depo. 94:24-95:1; Jordan Decl., Ex. F-I.)  Plaintiff

5   never assumed the Administrative Assistant position.

6          Plaintiff's declaration implies that she was denied the Administrative Assistant position

7   because Olimpia Lynch, a TSA Screening Manager, held some animus toward her.  (Jordan

8   Decl. ¶¶ 11, 13.)  Lynch's declaration denies that she was involved in the selection process for

9   the Administrative Assistant position, or that she played any role in the decision not to select the

10  Plaintiff for that position.  (Declaration of Olimpia Lynch ("Lynch Declaration") ¶¶ 4-6.)

11

12          3.      **DEFENDANT'S TERMINATION OF PLAINTIFF**

13

14          Following the July 2004 denial of Plaintiff's workers compensation claim, and upon

15  Alonso's determination that Plaintiff should return to full active duty as a security screener,

16  Plaintiff insisted that her ongoing light-duty assignment had been approved by the TSA human

17  resources department.  (Alonso Decl. ¶ 3; Jordan Decl. ¶ 19.)  Alonso disagreed, and sent

18  Plaintiff home.  (Id.)  Plaintiff did not return to work after this encounter with Alonso, and

19  through communications with the TSA continued to assert that her medical condition mandated a

20  light-duty assignment.  (Young Decl., Ex. 18-19.)  Plaintiff was informed by the TSA that she

21  was required to resume her full duties as a security screener, and that failure to do so could result

22  in termination.  (Alonso Decl. ¶ 2.)  Plaintiff never returned to work, and her employment with

23  TSA was terminated in January 2005.  (Jordan Decl. ¶ 21.)

24

25  **LEGAL STANDARD**

26

27          Summary judgment is appropriate only where the record, read in the light most favorable

28  to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

4

1 the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also*

2 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the

3 proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty*

4 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a

5 reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In deciding a

6 motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all

7 justifiable inferences are to be drawn in his favor." *Id.* at 255.

8       The burden initially is on the moving party to demonstrate an absence of a genuine issue

9 of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden,

10 then the non-moving party must produce enough evidence to rebut the moving party's claim and

11 create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this

12 burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210

13 F.3d 1099, 1103 (9th Cir. 2000).

14

15 **DISCUSSION**

16

17     1.      **PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM**

18

19         1.1     **Whether the ATSA Preempts the Rehabilitation Act**

20

21       Plaintiff seeks relief under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29

22 U.S.C. §§ 701 et seq., which provides that "no otherwise qualified individual with a disability . .

23 . shall, solely by reason of her or his disability, be excluded from the participation in, be denied

24 benefits of, or be subjected to discrimination under any program or activity receiving Federal

25 financial assistance." 29 U.S.C. § 794(a). Plaintiff claims that Defendant's failure to provide

26 her with reasonable workplace accommodations is a violation of the Rehabilitation Act.

27 (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition") 17:13-25.)

28       Defendant argues that Plaintiff is not entitled to relief under the Rehabilitation Act

1    because regarding the physical criteria required of TSA security screeners, the Rehabilitation Act

2    is preempted by the Aviation Transportation Security Act ("ATSA").  49 U.S.C. § 44935(e)-(f).

3    The Court joins all other federal courts that have addressed this issue, and finds that Plaintiff's

4    claim under the Rehabilitation Act is preempted by the ATSA.

5         Following the terrorist attacks of September 11, 2001, Congress passed the ATSA to

6    bring about "fundamental" changes in the provision of security in the civil air transportation

7    system.  H.R. Conf. Rep. No. 107-296 at 53.  Among the changes brought about by the ATSA

8    was establishment of the TSA, which replaced private sector baggage screeners with a new

9    workforce of federal security personnel.  49 U.S.C. § 44935(e)-(f).  Congress promulgated

10   specific hiring requirements for these federal security screeners, including that they exhibit

11   "daily fitness for duty without any impairment due to illegal drugs, sleep deprivation,

12   medication, or alcohol," 49 U.S.C. § 44935(e)(2)(A), and possess "basic aptitudes and physical

13   abilities . . . including physical coordination, and motor skills."  49 U.S.C. § 44935(f).  Of

14   special importance to the instant inquiry is the provision of the ATSA stating that,

15   "notwithstanding any provision of law," all security screeners must "be able to efficiently and

16   thoroughly manipulate and handle such baggage, containers, and other objects subject to security

17   processing," 49 U.S.C. § 44935(f)(1)(B).  Congress also mandated that "notwithstanding any

18   provision of law," security screening personnel must "meet such other qualifications as the

19   Under Secretary may establish."  49 U.S.C. § 44935(e)(2)(A).

20        The issue here is whether the "notwithstanding" language of the ATSA insulates the

21   criteria established for security screeners from challenge under other federal laws, specifically

22   the Rehabilitation Act.  The reasoned conclusion is to defer to the plain meaning of the words of

23   Congress, and find that the ATSA does preempt the Rehabilitation Act in this context.

24        The duty of a court engaged in statutory interpretation is to "give effect, if possible, to

25   every clause and word of a statute."  *United States v. Menasche,* 348 U.S. 528, 538-39 (1955).

26   More specifically, the use of "notwithstanding" in legislation signals the drafter's intention that

27   provisions of the relevant section "override conflicting provisions of any other section."

28   *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993).  Thus in stating that the employment

1   qualifications for security screeners shall apply "notwithstanding any provision of law,"

2   Congress intended that these qualifications be applied without modification by other laws,

3   including the workplace accommodation requirements of the Rehabilitation Act. *See Castro v.*

4   *Secretary of Homeland Security*, 472 F.3d 1334, 1337 (11th Cir. 2006) (holding that the

5   "notwithstanding" language of the ATSA allows the TSA to "implement hiring standards and

6   conditions (including physical conditions) for screening personnel, whether or not those

7   standards and conditions of employment are consistent with the Rehabilitation Act."); *Yeager v.*

8   *Chertoff*, 2006 U.S. Dist. LEXIS 96076 at *12-14 (W.D. Wash. Nov. 13, 2006); *Tucker v. Ridge*,

9   322 F. Supp. 2d 738, 743  (E.D. Tex. 2004) (holding that "[b]ecause the ATSA explicitly states

10  that the Under Secretary may establish the hiring criteria 'notwithstanding any provision of law,'

11  the hiring criteria are not subject to challenge under the Rehabilitation Act."); *Daniels v.*

12  *Chertoff*, 2007 U.S. Dist. LEXIS 28750 at *14-16 (D. Ariz. 2007) (finding ATSA preemption of

13  the Rehabilitation Act not only in the hiring context, but also with regard to the qualifications of

14  existing employees).

15          Plaintiff attempts to distinguish her case from the cases holding that the ATSA preempts

16  the Rehabilitation Act on factual grounds.  According to Plaintiff, those cases are inapplicable

17  here because unlike the employees and job applicants in those cases, Plaintiff "meet[s] the

18  minimum qualifications" for the position of security screener. (Opposition 16:7-17.)  For

19  example, in *Tucker v. Ridge*, 322 F. Supp. 2d 738 (E.D. Tex. 2004), the plaintiff suffered from a

20  medical condition that prevented him from lifting over 50 pounds. *Tucker*, 322 F. Supp. at 741-

21  42.  His application for employment as a security screener with the TSA was denied because he

22  was unable to meet the requirements established by the Under Secretary, including that all

23  security screeners be capable of lifting baggage weighing up to 70 pounds. *Id*. at 740.  The court

24  in *Tucker* held that plaintiff's Rehabilitation Act claim failed, as it was preempted by the ATSA.

25  *Id*. at 743.  Plaintiff asks the Court to distinguish *Tucker* because while the plaintiff in that case

26  was unable to meet the TSA's minimum qualifications, Plaintiff here did meet the minimum

27  qualifications as she could "thoroughly manipulate and handle such baggage, containers, and

28  other objects subject to security processing at the TSA." (Jordan Decl. ¶ 24.) The Court finds no

merit in this distinction.

The Court refuses to distinguish *Tucker* and other cases holding that the ATSA preempts the Rehabilitation Act on the grounds that the Plaintiff in this case did in fact meet the TSA's minimum qualifications for security screeners. The relevant question is not whether Plaintiff met the TSA's minimum qualifications–Defendant agrees that Plaintiff met the minimum qualifications, and for this reason requested that Plaintiff return to regular duty. (Alonso Decl. ¶¶ 2-3.) Instead, the relevant question is whether the TSA was obligated to provide Plaintiff with the accommodations she requested. Plaintiff asked the Defendant on numerous occasions to make special accommodations for her medical condition, including that she be allowed to work in a position that would allow her "sitting down time." (Young Decl., Ex. 12; see also Ex. 16, 18, 19.) Defendant initially accommodated Plaintiff by moving her to a light-duty assignment, but then required her to move back to full duty as a security screener when her worker's compensation claim was denied. (Alonso Decl. ¶¶ 2-3.) It was this transfer back to regular duty that precipitated Plaintiff's confrontations with TSA supervisors including Frank Alonso, and ultimately her termination. (Jordan Decl. ¶¶ 15-21.)

The Court finds that the ATSA preempts the Rehabilitation Act. The Defendant was therefore under no duty to provide Plaintiff with reasonable accommodations for her claimed disability, as might otherwise be required by the Rehabilitation Act. Because Defendant was under no duty to provide Plaintiff with the accommodations she requested, Plaintiff's claim of disability discrimination is supported by no valid legal theory and therefore no genuine issue is presented.

### 1.2    Plaintiff's Alleged Agreement With TSA

Plaintiff further asserts that in requiring her to return to regular duty as a security screener the TSA breached an earlier agreement between the parties. (Opposition 9:28-10:5.) According to Plaintiff's declaration, she was initially given the light-duty position in exchange for her promise to withdraw a previously-filed EEO complaint. (Jordan Decl. ¶ 2.) The letter from

1  EEO Counselor Gwendolyn Reid to Plaintiff reads as follows: "Based on your decision not to
2  pursue the allegation(s) noted above, because you stated that your complaint was resolved, when
3  you were reassigned to a temporary, light duty position . . . the above cited case will be closed."
4  (Jordan Decl. Ex. E.)  The evidence on this issue is ambiguous, but because Defendant offers no
5  evidence to rebut the existence of such an agreement, the Court will presume for purposes of this
6  summary judgment that Plaintiff did in fact withdraw her EEO complaint in exchange for
7  assurances that she would be transferred to light-duty.

8        The Court finds that even if an agreement between TSA and Plaintiff existed and was
9  breached, this could not establish disability discrimination.  Plaintiff has presented no evidence
10  indicating that the TSA violated its agreement with Plaintiff because of her disability.  In fact,
11  according to Plaintiff's account she was given the light-duty position "by way of an agreement,
12  not because of any worker's compensation claim." (Jordan Decl. ¶ 8.)  Having established that
13  she received the light-duty position without regard to disability, Plaintiff offers no evidence as to
14  why her transfer back to regular duty was, on the contrary, motivated by her disability.

16        **1.3    Conclusion**

18        Viewing the facts in the light most favorable to the Plaintiff, the Court finds that no
19  reasonable jury could find that Plaintiff was discriminated against on the basis of her disability.
20  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50.  Defendant's Motion is GRANTED
21  as to Plaintiff's claim of disability discrimination.

23        **2.    DISCRIMINATION CLAIMS BASED ON RACE AND SEX**

25        In an employment discrimination case, the plaintiff has the initial burden of
26  demonstrating a prima facie case of discrimination.  *McDonnell-Douglas Corp. v. Green*, 411
27  U.S. 792, 802 (1973).  But "a plaintiff's prima facie burden is minimal." *Sischo-Nownejad v.*
28  *Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991).  Once the plaintiff has

1   demonstrated a prima facie case of discrimination, the burden shifts to the employer to articulate

2   a legitimate, nondiscriminatory reason for the adverse action. *McDonnell-Douglas*, 411 U.S. at

3   802. If the employer can articulate a legitimate, non-discriminatory reason for the adverse

4   action, "the burden then shifts back to the plaintiff to show that the employer's stated reason for

5   the adverse employment decision was in fact pretext." *Id*. at 804.

6          Because this is a motion for summary judgment where the employee is the non-moving

7   party, the Plaintiff's efforts to establish a prima facie case under the *McDonnell-Douglas* test

8   will be viewed in a light most favorable to her, and the Court will make all justifiable inferences

9   in Plaintiff's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

10

11          **2.1    Requirement that Administrative Remedies be Exhausted**

12

13          Plaintiff's claims of race and sex discrimination arise from (1) the Defendant's decision

14   not to select Plaintiff for an Administrative Assistant position, (2) a series of allegedly hostile

15   encounters with TSA supervisors, and (3) the Defendant's termination of Plaintiff. Defendant

16   contends that only the non-selection issue is properly before the Court, as Plaintiff has not

17   properly exhausted her administrative remedies on other issues. The Court agrees with

18   Defendant.

19          To bring a claim in federal court for employment discrimination under Title VII of the

20   Civil Rights Act of 1964 ("Title VII"), a plaintiff is expressly required to exhaust her

21   administrative remedies as a precondition to filing suit. 42 U.S.C. § 2000e-16(c); *see also*

22   *Vinieratos v. United States*, 939 F.2d 762, 768 (9th Cir. 1991) (citing *Brown v. General Servs.*

23   *Admin.*, 425 U.S. 820, 832 (1976)). Under section 717(c) of Title VII, administrative remedies

24   are considered exhausted and claimant may file an action in federal court either 30 days after

25   receiving notice of final agency action by the employing agency or by the EEOC on appeal, or if

26   180 days have elapsed since the initial charge was filed with the proper agency and no final

27   action has been taken. *Charles v. Garrett*, 12 F.3d 870, 873-74 (9th Cir. 1993).

28          Plaintiff contends that she has exhausted her administrative remedies with EEO

complaints filed in March 2004 and in November 2004. But according to her own declaration, the March claim was withdrawn by Plaintiff, and no further action was taken. (Jordan Decl. ¶¶ 6-8.) As for the November 2004 complaint, the TSA Office of Civil Rights responded to Plaintiff's complaint with a letter asking Plaintiff to confirm the nature of her complaint:

> You are alleging that you were discriminated against as follows: On the bases of race (unspecified), aged (date of birth: August 19, 1948), disability (unspecified), sex (female) and reprisal (EEO complaint TSA-04-0647) you were not selected for an Administration Assistant position on August 8, 2004.
> . . . If you believe that the claim in the complaint has not been correctly identified please provide me written clarification . . . specifying why you believe the claim has not been correctly identified. (Young Decl., Ex. 4.)

Plaintiff presents no evidence that she responded to this inquiry to add the hostile encounter or termination claims to the EEOC charge, or that she has otherwise exhausted her administrative remedies on any issue other than non-selection.

### 2.1.1   Exhaustion of "Reasonably Related" Allegations

Despite a failure to exhaust administrative remedies as to a specific claim, a Title VII claimant can still bring suit in federal court if her allegations are "like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1100 (9th Cir. 2002). In determining whether a plaintiff's civil claim is reasonably related to the allegations made in the administrative charge, and therefore properly brought in federal court, the following factors are appropriately considered: (1) the alleged basis of the discrimination, (2) the dates of discriminatory acts specified in the charge, (3) perpetrators of discrimination named in the charge, and (4) any locations at which discrimination is alleged to have occurred. *Maui Police Dep't.,* 275 F.3d at 1100.

Because Plaintiff's EEOC charge was limited to the narrow issue of non-selection for the Administrative Assistant position, the Court finds that her other civil claims are not reasonably

1 | related to the non-selection issue and have not been exhausted. Plaintiff's other civil claims

2 | involve an array of acts and actors that bear little or no relationship to her non-selection

3 | allegation. For example, Plaintiff's theory of discrimination regarding her non-selection for the

4 | Administrative Assistant position focuses on the acts of supervisor Olimpia Lynch. (Jordan

5 | Decl. ¶¶ 11-13.) But Lynch played no role in any of the other discriminatory acts alleged by

6 | Plaintiff. Similarly, Plaintiff offers no evidence that her encounters with Jamilia Reese and

7 | Frank Alonso were "reasonably related" to the non-selection claim.

### 2.1.2   Conclusion

The Court finds that with the exception of the non-selection claim, the Plaintiff's other claims of race and sex discrimination have not been properly exhausted according to the requirements of Title VII. 42 U.S.C. § 2000e-16(c). Because the Plaintiff has failed to satisfy this "statutory precondition to suit," *Vinieratos*, 939 F.2d at 768 n. 5, Defendant's Motion is GRANTED as to Plaintiff's claims of race and sex discrimination other than those related to her non-selection for an Administrative Assistant position.

## 2.2   Race and Sex Discrimination for Non-Selection

Plaintiff claims that she was discriminated against on the basis of race and sex when she was not selected for TSA position of Administrative Assistant. Defendant asserts that Plaintiff fails to carry her initial burden of proving discrimination in the selection of the Administrative Assistant position because "she was not qualified for the position as a limited duty employee." (Motion for Summary Judgment 16:10-14.)

12

1  2.2.1  Prima Facie Case

2

3  To make out a prima facie case of discrimination based on race or sex under Title VII,

4  Plaintiff must prove: (1) she belongs to a protected class, (2) she applied and was qualified for a

5  job for which the employer was seeking applicants, (3) she was denied the promotion despite her

6  qualifications, and (4) the position remained open after her rejection and the employer continued

7  to seek applications from other people with similar qualifications to the plaintiff. *Warren v. City*

8  *of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995).

9  Defendant does not dispute that Plaintiff has established the first two prongs of the prima

10  facie case under Title VII, as (1) she is an African American female and therefore a member of a

11  protected class, and (2) was not selected for the Administrative Assistant position.  As to the

12  fourth prong of the discrimination inquiry, Plaintiff presents evidence that Jay Bilgemino, a co-

13  worker also on light-duty assignment, was considered for the position after Plaintiff was denied.

14  (Jordan Depo. 95:2-25.)  In the absence of rebuttal evidence from Defendant, this creates a

15  genuine issue as to whether "the position remained open after her rejection and the employer

16  continued to seek applications from other people with similar qualifications." *Warren*, 58 F.3d

17  at 442.

18  Defendant contests the third prong of the Title VII analysis, regarding whether Plaintiff

19  was denied the promotion "despite her qualifications." (Motion for Summary Judgment 16:10-

20  14.)  Defendant presents evidence that the Plaintiff was not qualified to be an Administrative

21  Assistant because the announced position excluded limited duty employees, and was offered

22  during the period when Plaintiff was on a light-duty assignment. (Lynch Decl. ¶ 3.)  Upon

23  examination of the vacancy announcements for the Administrative Assistant positions, the Court

24  finds there to be a genuine issue of fact as to whether limited duty employees were excluded

25  from consideration.  This follows from evidence that while at least one of the vacancy

26  announcements listed only "Full-Time Screeners assigned to Los Angeles International Airport"

27  as falling within the "Area of Consideration," other announcements indicated that the position

28  was open to "All TSA Employees" assigned to LAX. (Jordan Decl. Ex. F-I.)

13

1    The Defendant concedes that Plaintiff satisfies the first two prongs of a case of prima

2    facie discrimination, and the Court finds that there are genuine issues of material fact as to the

3    prongs three and four of this inquiry.  For purposes of summary judgment, the Plaintiff has

4    therefore established a prima facie case of discrimination.

5

6    2.2.2   Legitimate Non-Discriminatory Reason

7

8    Since Plaintiff has presented a prima facie case of race and sex discrimination, the burden

9    shifts to Defendant to show that there is a legitimate non-discriminatory reason for the non-

10   selection. *McDonnell-Douglas*, 411 U.S. at 802.  Because a genuine issue of material fact exists

11   regarding Defendant's non-discriminatory explanation, the Court finds that this burden has not

12   been met.

13   A defendant asserting a legitimate non-discriminatory reason must "'clearly set forth,

14   through the introduction of admissible evidence,' reasons for its actions, which if believed by the

15   trier of fact, would support a finding that unlawful discrimination was not the cause of the

16   employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting

17   *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-255 n.8 (1981)).

18   Defendant cites Plaintiff's failure to follow the formal application process as a legitimate

19   non-discriminatory reason for denying her the position of Administrative Assistant.  The

20   application requirements as laid out in the vacancy announcement included the following:

21   "Applicants should apply for vacancies using a resume.  Resumes must be received in Human

22   Resources at 5757 W. Century Blvd., Suite 850A, Los Angeles, CA 90045 by close of business

23   (4:30pm) on the closing date of this announcement.  Resumes received after this date will not be

24   considered." (Jordan Decl. Ex. F-I.)  The Declaration of Olimpia Lynch further attests to the

25   formal requirements of the process, including that applicants "submit an application and resume,

26   and complete the proper procedures when applying for an administrative position." (Lynch

27   Decl. ¶ 2.)

28   Plaintiff concedes that she did not follow the formal application process. (Jordan Depo.

14

94:24-95:1.) But she contends that Barbara Jones, her supervisor at the time, directly offered her
the position and that she accepted. (Jordan Decl. ¶¶ 9-10.) Plaintiff's account is directly
contradicted by Jones, whose declaration states that she "never made a job offer to the
Complainant regarding the Administrative Assistant position." (Jordan Decl., Ex. O.) The
evidence presented by the two parties as to whether Plaintiff was required to follow the formal
application process for the Administrative Assistant vacancy is clearly in contradiction. Because
the evidence of the non-moving party is to be believed, and all justifiable inferences drawn in
her favor, the Court finds that there is a genuine issue of material fact as to whether Defendant
has established a legitimate non-discriminatory reason for its actions. Therefore, on the issue of
whether Plaintiff was denied the Administrative Assistant position on the basis of race and sex
discrimination, the Court DENIES Defendant's Motion.

### 3.    PLAINTIFF'S AGE DISCRIMINATION CLAIM

Plaintiff contends that she was discriminated against on the basis of her age both in
Defendant's non-selection of her for the Administrative Assistant position, and in the
termination of her employment.

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-34, makes it
"unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's age." Id. at § 623(a). There are two
theories of discrimination available to a plaintiff alleging discrimination under the ADEA:
disparate treatment and disparate impact. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th
Cir. 1990). To prevail on a disparate treatment theory, the plaintiff must show that the employer
treated some people less favorably than others because of their age. *Id*. In contrast,
discriminatory impact theory does not require proof of specific discriminatory motivation, but
instead requires a showing that a neutral employment practice disproportionately impacts
individuals in a protected class. *Id*.

### 3.1    Disparate Treatment

To prevail on an ADEA claim under the disparate treatment theory a plaintiff must establish the following prima facie case: (1) membership in the protected class [age 40-70]; (2) that she was satisfactorily performing her job or was qualified for hire; (3) that she was terminated or rejected for employment; and (4) that she was replaced by a substantially younger person with equal or inferior qualifications. *Rose*, 902 F.2d at 1421.

Plaintiff fails to establish a prima facie case of disparate treatment discrimination as she fails to point to any evidence on the fourth prong of this inquiry. Plaintiff produces no evidence indicating that she was passed over for the Administrative Assistant position in favor of a "substantially younger person with equal or inferior qualifications," or that following her termination she was replaced by such an individual. Plaintiff's only reference to the individuals selected for the Administrative Assistant positions is that "two male employees were chosen." (Jordan Decl., Ex. H.) No evidence is offered regarding the age or the qualifications of these "two male employees."

Nor does Plaintiff provide any information as to the identity of the individual hired to replace her following her termination. And while failure to prove replacement by a younger employee is "not necessarily fatal" to an age discrimination case, at a minimum the plaintiff must show direct or circumstantial evidence giving rise to an inference of age discrimination. *Rose*, 902 F.2d at 1421-22.    Plaintiff has not produced any evidence that might create this inference.

### 3.2    Disparate Impact

A disparate impact claim challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Antonio v. Wards Cove Packing Co.*, 810 F. 2d 1477, 1480 (9th Cir. 1987) (en banc) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S.

324, 336 n. 15 (1977)). To establish a prima facie case of disparate impact the plaintiff must: (1) identify the specific employment practices or selection criteria being challenged; (2) show disparate impact; and (3) prove causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 993-94.

The only evidence offered by Plaintiff to support a disparate impact theory of age discrimination is that as of November 20, 2004, 933 out of 2,528 TSA employees at LAX, or 36.9%, were forty years of age or older. (Jordan Decl., Ex. M.) Plaintiff fails to identify any "specific employment practices or selection criteria being challenged." Without identifying any of Defendant's specific employment practices that may exclude certain individuals because of their membership in a protected group, Plaintiff fails to establish a prima facie case of age discrimination under the disparate impact theory.

### 3.3    Conclusion

Because Plaintiff has not shown a prima facie case of age discrimination under either the disparate treatment or disparate impact theories, Defendant's Motion is GRANTED as to Plaintiff's age discrimination claim.

### 4.    PLAINTIFF'S RETALIATION CLAIM

Plaintiff alleges that in response to her filing EEO complaints she was subjected to retaliatory acts by TSA supervisors, including being passed over for Administrative Assistant positions, being transferred from a light duty assignment back to regular duty as a security screener, having her schedule changed without notice, and being sent home without pay. (Jordan Decl. ¶¶ 11, 12, 15, 19.) Defendant contends that each of these adverse actions is supported by a

legitimate non-retaliatory explanation.

### 4.1    Application of Exhaustion Requirement

The requirement that a claimant exhaust administrative remedies before filing a suit in federal court under Title VII applies with equal force when an employee alleges discrimination under a retaliation theory. For the reasons discussed in Section 2.1 above, Plaintiff's failure to exhaust administrative remedies as to all Title VII issues other than non-selection precludes her from litigating those issues in federal court. 42 U.S.C. § 2000e-16(c); *see also Vinieratos v. United States*, 939 F.2d 762, 768 (9th Cir. 1991). The Court will therefore confine its consideration of Plaintiff's retaliation claim to the non-selection of Plaintiff for an Administrative Assistant position.

### 4.2    Non-Selection as a Retaliatory Act Against Plaintiff

Title VII states that it is unlawful for "an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing," authorized by the statute. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must prove (1) that she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the employer's action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Defendant concedes that Plaintiff was engaged in a protected activity when she filed EEO complaints, and that she subsequently suffered adverse employment actions when she was not selected for the Administrative Assistant position. (Motion for Summary Judgment 13:20-27.) But according to Defendant, Plaintiff fails to satisfy the third prong of the prima facie case of retaliation, a causal connection. (Id.) The Court agrees, and finds that Plaintiff cannot establish a prima facie case of retaliation.

1   Causation between an employee's protected activities and an employer's adverse action
2   may be inferred from "proximity in time between the protected action and the allegedly
3   retaliatory employment decision." *Ray*, 217 F.3d at 1244. The plaintiff must also make some
4   showing sufficient for a reasonable trier of fact "to infer that the defendant was aware that the
5   plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185,
6   1197 (9th Cir. 2003). The plaintiff in *Raad*, a woman of Lebanese descent and an applicant for
7   full-time public school teaching positions, was passed over for numerous teaching vacancies by
8   defendant school district. She eventually filed an EEO complaint of unlawful discrimination
9   based on her national origin and religion. *Id.* at 1190. In a subsequent civil action, plaintiff
10  alleged that the school district continued to deny her applications for teaching positions in
11  retaliation for her filing the EEO complaint. *Id.* at 1197. In upholding the district court's
12  summary judgment for the defendants, the Ninth Circuit cited plaintiff's failure to provide any
13  evidence that the particular school principals who made the allegedly retaliatory hiring decision
14  "in fact were aware of her complaints." *Id.* Without any evidence in the record indicating that
15  the hiring authority had actual knowledge of plaintiff's protected activity, the *Raad* court found
16  no genuine issue of material fact on the causation prong of plaintiff's prima facie case of
17  retaliation. *Id.*
18  Similar to the plaintiff in *Raad*, Plaintiff here fails to produce any evidence, either direct
19  or circumstantial, that would infer a causal connection between her filing of EEO complaints and
20  her non-selection for the Administrative Assistant position. Plaintiff produces no evidence as to
21  who made the hiring decision for the position, nor is evidence produced indicating that the
22  person who did make the hiring decision had knowledge of Plaintiff's EEO complaints. Olimpia
23  Lynch, the supervisor implicated by Plaintiff as playing some role in the non-selection,
24  unequivocally asserts that she was not involved in the selection process for the Administrative
25  Assistant position, and that she "was not aware of Ms. Jordan's prior EEO activity before the . . .
26  position was filled." (Lynch Decl. ¶¶ 5-6.) Plaintiff offers no evidence to dispute Lynch's
27  testimony.
28  Thus even making all inferences in favor of the Plaintiff, the Court finds no genuine issue

1   of material fact to exist on the issue of causal connection. Because Plaintiff fails to establish a

2   prima facie case of retaliation, Defendant's Motion is GRANTED as to Plaintiff's retaliation

3   claim.

4

5   **DISPOSITION**

6

7       For the reasons stated above, Defendant's Motion is GRANTED IN PART and DENIED

8   IN PART. The Court GRANTS the Motion as to Plaintiff's claims for disability and age

9   discrimination, race and sex discrimination on all issues other than non-selection, and as to

10  Plaintiff's claim of retaliation. The Court DENIES the Motion as to Plaintiff's claim of race and

11  gender discrimination in the non-selection of Plaintiff for an Administrative Assistant position.

12

13

14  IT IS SO ORDERED.

15  DATED: August 27, 2007

16

17

18                   Andrew J. Guilford

19               United States District Judge

20

21

22

23

24

25

26

27

28

# Exhibit B

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 07-20110-CIV-GRAHAM

**CLOSED
CIVIL
CASE**

REINA RAMOS ARIAS,

     Plaintiff,

vs.

MICHAEL CHERTOFF, as Secretary
of the Department of Homeland
Security,

     Defendant.

_____/

<u>ORDER</u>

**THIS CAUSE** came before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint with Memorandum in Support [D.E. 15].

**THE COURT** has reviewed the Motion, the pertinent portions of the record, and is otherwise duly advised in the premises.

## I. BACKGROUND

Plaintiff filed her Complaint in the above captioned cause on January 12, 2007. It contains three (3) Counts. Counts I and II allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), <u>et</u> <u>seq</u>. Count III alleges violation of the Rehabilitation Act of 1973, 29 U.S.C. §701, <u>et</u> <u>seq</u>.

Plaintiff was employed by the Transportation Security Administration ("TSA") beginning October 20, 2002 as a baggage handler at Miami International Airport. On January 8, 2003, Plaintiff sustained an on the job injury. As a result of the injury, in April 2003, TSA placed Plaintiff on light duty

assignment in the supply room. Beginning in April 2003, Plaintiff began to complain of sexual harassment by supervisory personnel at the TSA. According to the Complaint, no one at TSA adequately addressed Plaintiff's concerns.

Plaintiff alleges that she was constructively discharged on March 26, 2004, when TSA management, knowing of her injury, ordered her to return to a security checkpoint to perform normal screener job functions.

On July 6, 2004, Plaintiff filed a formal complaint with the Office of Civil Rights and Civil Liberties for the U.S. Department of Homeland Security, alleging that her supervisors subjected her to a hostile work environment due to continuous acts of sexual harassment, and that she was denied a reasonable accommodation which resulted in her constructive discharge from employment. Plaintiff received a right-to-sue letter on May 4, 2006.

On July 27, 2006, in response to the right-to-sue letter, Plaintiff filed an action in federal court alleging violation of Title VII and the Rehabilitation Act against Michael Chertoff, as Secretary of the Department of Homeland Security. That action was assigned to the Honorable Joan A. Lenard. On December 19, 2006, Judge Lenard dismissed the action based on Plaintiff's failure to serve the Complaint within the time permitted by the Federal Rules of Civil Procedure, stating, "[the] deadline has now passed, and Plaintiff has failed to effectuate service on Defendant." The instant action filed on January 12, 2007 is substantially similar

2

to the action dismissed by Judge Lenard on December 19, 2006.

Defendant's Motion to Dismiss presents only issues of law and argues for dismissal of Plaintiff's Title VII claims as time barred, and for dismissal of her Rehabilitation Act claim as preempted.

## II. MOTION TO DISMISS STANDARD

A complaint should not be dismissed where there are enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Once a complaint states all claims adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. at 1969. A court must accept a plaintiff's well pled allegations as true and construe the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974). The threshold of sufficiency that a complaint must meet is exceedingly low. Ancata v. Prison Health Servs. Inc., 769 F.2d 700, 703 (11th Cir. 1985); Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). It is with this standard in mind that the Court addresses Plaintiff's Complaint.

## III. DISCUSSION

A. Title VII Claims (Counts I and II)

Under Title VII, a plaintiff has 90 days from receipt of a right-to-sue letter to initiate an action in federal court. Stallworth v. Wells Fargo Armored Services Corp., 936 F.2d 522, 524

(11th Cir. 1991). Plaintiff received her right-to-sue letter as it relates to this action on May 4, 2006. She timely filed an action based on the right-to-sue letter on July 27, 2006. That action was dismissed by Judge Lenard on December 19, 2006 based on Plaintiff's failure to timely serve the Defendant. Plaintiff did not seek relief from that order of dismissal. Instead, Plaintiff re-filed the instant action on January 12, 2007.

Defendant argues that Plaintiff's Title VII claims are time-barred because the previously dismissed action did not toll the 90 day limitation period. Plaintiff argues that dismissal on this grounds is improper. The Eleventh Circuit recently addressed an identical issue in <u>Miller v. Georgia</u>, 223 Fed. Appx. 842 (11th Cir. 2007). In <u>Miller</u>, the plaintiff "filed her initial complaint...well within the 90-day period, but after that complaint was dismissed for failure to perfect service, she [re-]filed her instant complaint...beyond the 90-day period." <u>Id</u>. at 844-45. The Eleventh Circuit ruled that the complaint was time-barred because the previously dismissed action did not toll the 90 day period that began upon receipt of her right-to-sue letter. <u>Id</u>. at 845.

Similarly, Plaintiff here filed her initial action within the 90 day period. That action was dismissed for failure to perfect service. Plaintiff re-filed the instant action well beyond the 90-day period. The prior action did not toll Plaintiff's time for fling the Title VII claims alleged her. Accordingly, Plaintiff's Title VII claims are time-barred.

4

B. <u>Rehabilitation Act Claim (Count III)</u>

Count III of Plaintiff's complaint alleges that Defendant violated the Rehabilitation Act. Specifically, Plaintiff alleges that Defendant discriminated against her on the basis of her disability by denying her a reasonable accommodation and by compelling her to work at a baggage checkpoint, resulting in her constructive discharge. The Rehabilitation Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability. <u>Mullins v. Crowell</u>, 228 F.3d 1305, 1313 (11th Cir. 2000). The Aviation and Transportation Security Act (ATSA), 29 U.S.C. §44935, sets forth employment standards for airport security screeners. In a note following §44935, Congress indicated the discretion given to the TSA with regard to the hiring and terms and conditions of employment of security screeners:

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the Under Secretary determines be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code.

Defendant argues that Plaintiff's claim is barred because the ATSA preempts the Rehabilitation Act and authorizes the TSA to set qualifications, conditions, and standards for employment of security screeners without being subject to the requirements of the Rehabilitation Act.

The 11th Circuit recently decided a similar issue as it applies to hiring decisions in Castro v. Secretary of Homeland Sec., 472 F.3d 1334 (11th Cir. 2006)[1]. The Plaintiff in Castro had been denied employment as a security screener because of his history of seizures. Id. He brought an action claiming that the TSA's refusal to hire him based on his medical history violated the Rehabilitation Act. Id. The Eleventh Circuit ruled that the plaintiff's claim was preempted by the ATSA. Id. at 1338.

The Eleventh Circuit explained that §44935(e), which establishes hiring qualifications for security screeners, and the note following §44935 indicate Congress' intent for TSA to implement hiring standards and conditions of employment (including physical standards) for screening personnel. Id. at 1337. The court then went on to explain that the language, "notwithstanding any other provision of law," was Congress' indication that the ATSA was "intended...to take precedence over any preexisting or subsequently-enacted...legislation [on the same subject]." Id.

Plaintiff argues that Castro should be limited to hiring situations and should not be applied to the present case. However,

---

[1] Plaintiff argues that Castro has no precedential value because the Eleventh Circuit issued the decision per curiam and thus the Court should not follow it here. Plaintiff's argument is without merit. See Anders v. Hometown Mortgage Servs., Inc., 346 F.3d 1024, 1031 (11th Cir. 2003) (citing two per curiam Circuit decisions mandating that prior panel precedent rule obligates Court to follow holdings in earlier decisions as far as facts and circumstances presented in case decided); U.S. v. Machado, 804 F.2d 1537, 1543 n.11 (11th Cir. 1986) (noting that prior precedent rule applies in per curiam opinions).

the "notwithstanding" language is not found exclusively in §44935(e)(2), which addresses the hiring of security screeners by the TSA. Instead, the same language is found again in §44935(f)(1), which establishes employment standards for screening personnel.

The "notwithstanding" language found at the beginning of §44935(f)(1) is apart and independent from the same language at the beginning of §44935(e)(2) regarding the hiring of TSA security screeners. Additionally, in §44935(f)(1) Congress established that an individual may not be <u>deployed</u> as a security screener without meeting certain conditions--including physical standards. Congress' use of the word "deployed" indicates that these standards were not meant to be applied solely to hiring situations. Applying the "notwithstanding" analysis explained above, along with the Congressional note following §44935 and the specific finding by the <u>Castro</u> Court that the language applies to both hiring practices and conditions of employment, the plain language of §44935(f) establishes that the TSA's conditions of employment for security screeners, are not subject to the restrictions found in the Rehabilitation Act. Accordingly, Plaintiff's claim based on the Rehabilitation Act must be dismissed.

Based thereon, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint with Memorandum in Support [D.E. 15] is

GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff may file an amended complaint, if appropriate, within ten (10) days from the date of this Order. It is further

ORDERED AND ADJUDGED that this case is **CLOSED** for administrative purposes, and all pending motions are **DENIED**, as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 22 day of August, 2007.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record